COLE'S ADM'R v. WINTERCOST.

In order to fix the liability of the drawer of a bill of exchange, the bill must be presented to the drawee, or facts must be shown which excuse the failure to present it. *Quere*, whether this case intimates that notice is necessary to bind the drawer where the bill is not accepted, since the Act of 1848. (Hart. Dig. Art. 2530.)

Where the plaintiff, in an action on a bill of exchange, seeks to charge the defendant on the ground of no funds in the hands of the acceptor, or of a promise to pay, after failure to protest and give notice, those facts must be alleged in the petition.

See this case for proof which would not amount to an admission of a particular claim, or to a waiver of a failure to use due diligence to collect a bill of exchange.

Where there is a failure of legal diligence to fix the liability of the drawer of a bill of exchange, the holder may excuse such failure by alleging and proving that the bill was drawn without funds, unless the drawer (allege and) prove facts which show that the bill was drawn in good faith, and that he was entitled to strict notice.

Appeal from Harrison.

*Henderson & Jones*, for appellant. I. By our law it is

provided, " that the drawer of any bill of exchange, which " shall not be accepted when presented for acceptance, shall " be immediately liable for the payment thereof." (Hart. Dig. Art. 2530.) The mercantile law as to presentment for acceptance remains in force. (Story on Bills of Exchange, Sec. 108, and n. 1 ; Id. Sec. 227, 228, and n. 1 ; Id. Sec. 231 and notes.) There is no proof whatever that the draft was ever presented.

II. The charge to the jury is evidently erroneous. (Story on Bills of Exchange, Sec. 234, 276, 367, 369, 375—377 and notes ; Chit. on B. of Ex. 467, 468.) It cast the burden of proof of effects, on the drawer.

III. The subsequent admission, attempted to be proved, was not alleged. (3 Tex. R. 310 ; 8 Id. 361 ; 5 Id. 539 ; 1 Id. 447.) And not the least connection appears between the admission and the draft sued on. On the contrary, the terms of the admission are inconsistent with the supposition that it referred to the indebtedness represented by the draft.

LIPSCOMB, J. This suit was brought by the appellee against the appellant, on a draft given by the appellant's intestate, and set forth in the plaintiff's petition, as follows, i. e. :

$430 95-100.        MARSHALL, Texas, Sept. 1, 1849.

At one day's sight, pay to the order of A. Wintercost the sum of four hundred and thirty 95-100 dollars, and charge the same to the account of

Your ob't servant,

D. J. COLE.

To ALFRED KERLEY & Co., Shreveport, La.

In the petition it is alleged, that the draft was presented and payment refused, and notice to the defendant. It further alleges, that at the date of the drawing of the draft, that Cole had no assetts or funds in the hands of Alfred Kerley & Co., to satisfy the same, nor had he any effects in their hands at

the time said instrument was presented to them for accept-
ance and payment, nor had he any effects at any time after-
said instrument was delivered to petitioner, of which the sum
of money therein specified, could be paid.

To fix the liability of the drawers it is necessary, on the
part of the plaintiff, to prove presentation for payment, re-
fusal to pay and notice to the drawer, and this legal diligence
can only be dispensed with, by proof that the drawer had no
funds or effects in the hands of the drawees at the time the
said draft was payable.   Or that he had promised subsequent-
ly to pay the debt.   There was no proof of presentment, and
non-acceptance of the draft, nor of non-payment, and there-
was no allegation in the petition of a subsequent promise, and
the liability of the drawer must depend on the question of
funds or no funds in the hands of the drawee at the time of
presentation or date of payment.   Judge Story, in his work
on Bills of Exchange, says, " if the drawer has no right-
" whatsoever to draw the bill, or no reasonable ground to ex-
" pect the bill to be accepted, he is not deemed entitled to
" notice of the dishonor thereof, for it was his own fault to-
" draw the same ; and, correctly speaking, he cannot be said
" to have suffered any loss by the want of notice.   Thus, for
" example, ordinarily if the drawer draws the bill without
" having funds in the hands of the drawee, or expectation of
" funds, or any arrangement or agreement on the part of the
" drawee, to accept the bill, he will not be entitled to notice,
" and not be discharged  by the want thereof.   But, although
" the drawer has no funds in the hands of the drawee, yet, if
" he has a right to expect to have funds in the hands of the
" drawee to meet the bill, or has a right to expect the bill to-
" be accepted by the drawee, in consequence of an agreement
" or arrangement with him, or if upon taking up the bill, he
" would be entitled to sue the drawee, or any other party to-
" the bill, then and in every such case, he is entitled to strict-
" notice of the dishonor."   (Story on Bills of Exchange, Sec.
311.)   The learned and honorable author, in the same section,

says that these distinctions may seem, at first view, to be somewhat artificial and not altogether satisfactory. " But it " is founded upon the consideration that in the latter case the " drawer draws the bill in good faith, and has reasonable " grounds to believe that it will be honored ; and therefore " he may well insist upon a punctual discharge of duty on " the part of the holder ; whereas in the former cases, it is his " own fraud or folly to draw a bill which he has no reasonable " ground to expect to be honored ; and therefore he may well " impute the injury, if any to himself, to his own laches, and " to his having misled the holder."

Having shown what the law requires, to excuse a want of that notice to the drawer, we will next examine the evidence presented in the statement of facts, to see how far the plaintiff in the Court below succeeded in bringing himself within these rules. It appears that the plaintiff first read to the jury the draft sued on, and then introduced as a witness William H. Cobb, who testified that he never saw or heard of the draft sued on until the moment of his testifying ; that in the latter part of the year 1850, or the first of the year 1851, i. e. in December, 1850, or January, 1851, the plaintiff gave to witness his draft draw on D. J. Cole, the intestate of the defendant, for about the amount of the draft sued on, which witness soon afterwards presented to said Cole, when Cole told witness that he was not prepared to pay ; that he owed the amount of the draft, for goods bought from the plaintiff, and he. was, by the contract, not to be pressed for the payment until the goods were sold, and they were not sold ; that he had cotton in the hands of Alfred Kerley & Co., of Shreveport, but was apprehensive that he would not be able to make it available, as he understood that the said house of Alfred Kerley & Co. was in a doubtful condition. Witness further said that neither plaintiff or defendant ever mentioned the draft sued on to him ; that in the latter part of the year 1850, or beginning of 1851, said house was suspected to be in a failing condition, and in the year 1851 did make an assignment of their assetts and go into liquidation.

This was the whole of the evidence, upon which the jury found a verdict for the plaintiff, on the draft. It will be seen that there was not a particle of proof, that at the time the draft was drawn, and at the time when it was reasonable to suppose it would be due, the drawer had no funds in the hands of the drawee, out of which it would be paid. The draft was drawn 1st September, 1849, dated at Marshall, in this State, on the drawees, who lived at Shreveport, not over thirty-five miles off, and at one day's sight. In all drafts drawn at sight, or so many days after sight, it is the rule of law, that the draft should be presented within a reasonable time, taking into consideration distance, and the facilities of intercommunication between the places of the residence of the parties, or the bill will belong to the holder at his own risk. There was no evidence at all, as to the state of accounts between the drawer and drawee, from the date of the draft, until the conversation between witness and the drawer, fifteen months after the date of the draft, and then that drawer had funds or effects in the hands of the drawees. We think, then, that there was a total failure in evidence, to make the defendant liable, without strict notice, and that a new trial ought to have been granted.

Had there been an averment of a subsequent promise to pay the bill, (which there was not,) the evidence would have been wholly insufficient to support the averment. The admission of the defendant's intestate has no direct reference to the bill, and taking the admission altogether, as made, the presumption that it was the same debt is repudiated. He says that he owed the debt for which plaintiff had drawn on him, for the purchase of goods, and by the contract, he was not to be pressed for payment until the goods were sold, and that they had not been sold. This could not be the debt, acknowledged to be due and intended to be secured by the draft drawn more than fifteen months before, at one day's sight.

It is assigned for error, further, that the Court erred in its charge to the jury. The charge is as follows, i. e. : "If you " conclude from the testimony, that, at the time of drawing the

"draft, A. Kerley & Co. had no means in their hands of "Cole's to pay the same, then plaintiff is entitled to recover "the amount of the draft. If the proof shows means as above "in the hands of Kerley & Co., then plaintiff is not entitled to "recover."

It seems to us that the last clause of the charge is erroneous. It would seem to be the opinion of the Court, that it was necessary to show by proof, the fact that the drawer had funds or means of paying the bill in the hands of the drawee. Now, it is the law, that when the holder of the bill undertakes to excuse himself from the rule requiring strict notice of non-acceptance and non-payment, on the ground that the bill was drawn without funds, the burthen of proof is upon him, and he assumes the laboring oar, to bring himself within the exception. And it is a presumption of law, that the drawer had funds in the hands of the drawee, when the bill was drawn ; and when the plaintiff has shown the fact of a want of funds, he has made out a *prima facie* case in his favor, but it is only *prima facie*, and the defendant, the drawer, may then show that notwithstanding the want of funds, his bill was drawn in good faith, and that he was entitled to strict notice. (Story of Bills of Exchange, Sec. 312.)

Because, then, the Court erred in its charge, and also erred in overruling the motion for a new trial ; the judgment is reversed, and the cause remanded for a new trial.

Reversed and remanded.