BATTS & DEAN v. J. Z. H. SCOTT, ADM'R, AND ANOTHER.

O. P. BOWLES v. SAME.

1. Under the law of this State, an innocent purchaser of an equitable title to real estate is as much entitled to protection as a purchaser of the legal title. A purchaser by title bond, therefore, who has paid the whole or part of the purchase-money, without notice, actual or constructive, of prior equities of other parties, is entitled to protection against such equities, to the extent of the payment so made, but to no greater an extent. The execution of negotiable promissory notes to the vendor at the time of the making of the title bond, and the contemporaneous undertaking to discharge such notes by paying for goods delivered to the vendor by a third party on the vendee's responsibility, are considered tantamount to an actual payment by the vendee to the vendor, and to a cancellation of the notes as between them.

2. Our registration laws are applicable to equitable titles and interests, in like manner as to legal titles and interests.

3. On the 23d of March, 1867, M. and wife owned and occupied a homestead in B. county, and on that day M. conveyed a lot in Galveston to a creditor to secure a debt. In the fall of 1867, M. and his family moved upon the lot in Galveston, and occupied it as the homestead until the death of M., whose widow and minor children continued to occupy the lot as a homestead until the widow also died. The estates of M. and wife were insolvent, and they left no other real estate than the lot in Galveston. The creditor brought suit to foreclose. *Held*, that as M. and wife, at the execution of the deed of trust, occupied as their homestead other land than the lot in question, their homestead right attached to the lot (if it attached to it at all), subject to the deed of trust; but that the minor children of M. and wife were entitled, in preference to the deed of trust, to an allowance in lieu of a homestead, to be raised by a sale of the lot by the administrator—the overplus, above the allowance to the minor children, to be applied to the deed of trust, which had been presented to the administrator, duly probated.

4. A simple statement by a man owning and occupying a homestead, made to other parties, to the effect that he intended to remove to and make

his homestead upon other premises belonging to him, is *held* in this case to be insufficient to establish a dedication of such other premises to homestead purposes, so as to invalidate his subsequent conveyance of such premises without the concurrence of his wife.

APPEAL from Galveston. Tried below before the Hon. C. B. Sabin.

The material facts are stated in the opinion of the court. McNeil and wife both died previous to the adoption of the Constitution of 1869, and while the value of an urban homestead was limited to two thousand dollars.

The jury returned a verdict in favor of the appellees, and specially in favor of Mrs. Hammett against Bowles and Batts & Dean, the plaintiffs; and the court below adjudged that the plaintiffs had no claims whatever against the property. ·

Able briefs were filed in this court by the counsel of the several parties litigant; but space cannot be afforded for their insertion at any considerable length.

*Mann & Baker*, for the appellant Bowles, after disposing of other questions, discussed as follows the claim of McNeil's minor children to an allowance out of the property, in lieu of a homestead:—

As to the claim of two thousand dollars in lieu of a homestead, we hold that to construe the law so as to give that amount out of the proceeds of sale of the encumbered property would, under the circumstances of this case, make it unconstitutional.

The law makes provision for allowance, in lieu of homestead, as against liens, and if our lien contract had been made when our debtor McNeil had no homestead, clearly we would have taken, subject to the risk of his dying and of the allowance being made out of this property if he left no other. Can it be said that we contracted subject to this contingency, when, at. the date of our contract there was a homestead, and our contract was made with reference to that fact, and would not have been made if McNeil had not had a homestead.

The present non-existence of that homestead is not by operation of law, but by voluntary act of McNeil and wife, beyond our reach, beyond our control. Can the operation and effect of the exemption laws on our contract be changed by such change of facts? If the homestead in Bastrop had not been sold, our lien, it is clear, could be enforced; can it now be said to be void in whole or in part? If the validity of the lien has been affected, it has impaired the obligation of our contract by act of one party, and to so use the law so as to thus divest our rights is to give it an unconstitutional effect.

In other words, the allowance in lieu of homestead may be constitutional as to contracts made when there was no homestead in kind, but our contract being made when there was a homestead, to allow any law to divest our rights by any subsequent changes of fact, not the act of God and beyond human control, would be to give it the effect of impairing the obligation of the once valid contract.

*Mills & Tevis*, for the appellee Mrs. Hammett, insisting that she was a purchaser for value, cited Freeman *v.* Dewey, 3 Sanford's Ch. R., 288; Boggs *v.* Varner, 6 Watts & S., 469; Frost *v.* Beckman, 1 Johnson's Ch. R., 288; Jewett *v.* Palmer, 7 Johnson's Ch. R., 65; Henderson *v.* Pilgrim, 22 Texas, 464; and Fraim *v.* Frederick, 32 Texas, 294.

*McLemore & Hume*, for the appellee White, guardian of the minor children of McNeil and wife.

The property in controversy was the homestead of McNeil, before and at the time of his death; and afterwards of his widow and children, and therefore protected from forced sale by the Constitution, and exempt from administration by the laws. Section 22, Article 7, Constitution, Paschal's Digest, Article 1305. The only question that can arise (except between vendor and vendee, in an action by the former to enforce claim for purchase-money), when land is claimed to be exempt, as a homestead, from forced sale, is: "Was, or was not the land or the

"lots the homestead of the debtor at the time of the forced sale? "If it were his homestead at that time, it seems incontrovertibly "clear, under the Constitution, that it is not subject to forced "sale." (Stone v. Darnell, 20 Texas, 14; Green v. Crow, 17 Id., 190.)

We believe the record presents no novel question, and consider that the issues made between the appellants and the guardian have been long since definitely settled by this court in favor of the latter. If the appellants are "creditors" of McNeil's estate, and the property was McNeil's homestead at the time of his death, and has since been the homestead of his widow and children, and the estate was insolvent, the charge of the lower court was correct, and the judgment should be affirmed.

We respectfully request the court's attention to the references already made, and the articles and cases hereinafter cited. We regard them as decisive of this cause, and do not believe they can be made to consist with any theory that would result in a reversal of the judgment appealed from.

(Paschal's Digest, Article 1319, Note 493; Chandler v. Burdett, 20 Texas, 42; Sassamon v. Powell, 21 Id., 664; Boggess & Peck v. Lilly, 18 Id.; Giddings v. Crosby, 24 Id., 299; Runnels v. Runnels, 27 Id., 518; Cunningham v. Taylor, 20 Id., 130; Blair v. Thorp, 33 Id., 39.)

OGDEN, J. Batts & Dean and O. P. Bowles instituted separate suits against the same defendants in the Galveston district court, for the foreclosure of separate deeds of trust upon the same fractional portion of a lot of land in Galveston city, and by agreement of all parties, the two causes were consolidated into one, and were thereafter treated as one suit. A trial was had, and a verdict and judgment were rendered against the plaintiffs below, and they have appealed.

The errors assigned have reference to the rulings of the court on the trial and the charges given to the jury, and it is claimed that thereby the jury were misled into finding an illegal verdict, and one upon which no proper decree could be entered. There

was no error in the ruling of the court on the demurrer to the answer of defendant, Mrs. Hammett; her answer shows most clearly that she was an innocent purchaser for a valuable consideration, and that a moiety of the purchase-money was paid down.   This fact, alone, would give her a right to be heard, and for this her answer was not subject to a general demurrer.   It is believed that under our law and the frequent decisions of this court, an innocent purchaser of an equitable title to land is as much entitled to protection as the purchaser of a legal title. (Article 4983, Paschal's Digest, and note.)

There was error in the charge of the court, wherein the jury were instructed that if they believed from the evidence that Hammett purchased in good faith, without notice, and for a valuable consideration, paid or to be paid, then they should find for the defendant, Mrs. Hammett.   This, as a legal proposition, without qualification, is believed to be in violation of a well-established principle of law and the repeated decisions of this and other courts.   (Nolan v. Gwyne, 16 Ala., 725; High v. Batte, 10 Yerger, 335; Jewett v. Palmer, 7 Johns. Chan. Rep., 65; Beaty v. Whitaker, 23 Texas, 528; Watkins v. Edwards, 23 Texas, 447.)   In order to entitle a party to be treated as an innocent purchaser for a valuable consideration, the purchase-money must be paid, and if but part of the purchase-money has been paid, then he can claim the protection of a court of equity only to the extent of the payment made, and not as to the entire purchase, as the jury in this case were authorized to believe from the charge of the court.

The facts in this cause, however, are such as to render the error referred to in the charge of the court immaterial, as an unobjectionable charge would not have changed the verdict. Hammett and wife purchased the sixty-five feet of land claimed by the surviving wife, on the 28th of March, 1867, and paid in cash one thousand four hundred dollars, one-half of the purchase-money, and executed to McNeil three negotiable promissory notes for the balance, and at the same time there was a definite understanding and agreement between McNeil, Hammett, and

Hennessy, that the latter should sell to McNeil certain merchandise on the credit and responsibility of Hammett, and that Hammett should pay the same in discharge of his negotiable notes given to McNeil. Hennessy testifies that the agreement was entered into at the time of the purchase by Hammett, and that, in compliance with said agreement, he let McNeil have the goods upon the responsibility of Hammett, who was at, that time his clerk; that, in compliance with said agreement, Hammett paid a considerable portion of the amount due McNeil to Hennessy, and finally executed a note for the balance. We are of the opinion that the execution of negotiable notes to McNeil, and, at the same time, agreeing to pay McNeil's debts to the amount of those notes, are tantamount to a full payment to McNeil, and the cancellation of his debt so far as he was concerned.

It is, however, claimed that, as Mrs. Hammett's is only an equitable title, that title should be held subordinate to appellant's prior equities, and that therefore the judgment in her favor is erroneous. But it should be remembered that equity follows the law, and that the same rules for the registration of legal titles and interests must be observed in regard to equitable titles and interests, and that appellants, in failing and neglecting to record their deeds of trust until after the purchase by Hammett, thereby lost all claim to a priority of equities. We think the judgment in favor of Mrs. Hammett fully sustained by the law and the equities of this case, and that, in so far, it should be affirmed.

But we are of the opinion that there was manifest error in the charge of the court in regard to the homestead interest of the minor heirs of McNeil, deceased. It appears from the facts of this cause that, at the time of the execution of the deeds of trust to appellants, McNeil and family resided in the county of Bastrop, where they had owned a residence and homestead for many years, and had never occupied the land in question as a homestead; that McNeil and family moved upon the land in the fall of 1867, long after the execution of both

deeds of trust.   There can be no pretense or claim that, when the deeds of trust were executed, McNeil and family occupied or held the lot as a homestead, nor that McNeil could have sold the land, by an indefeasible deed, without the signature of the wife.   The bond for title to Hammett was signed by McNeil alone, and it may be presumed that the deeds of trust were executed in the same way, and yet no question as to the validity of either is raised on account of the absence of the signature of Mrs. McNeil.   If, then, at the time of the execution of the deeds of trust, the lot in controversy was not the actual homestead of McNeil and family, but that they had a homestead in Bastrop, then McNeil had a right to sell or encumber this lot in Galveston, and he did so encumber the same, by giving a deed of trust to O. P. Bowles in March, 1867, and another to Batts & Dean in July of the same year; and it was not until November following that he moved upon the same as a homestead.   And under these circumstances it would seem clear that the homestead right attached, if at all, subject to the prior equities of appellants.   In Farmer v. Simpson, 6 Texas, 303, Justice Lipscomb, in delivering the opinion of the court, said: "And all liens acquired before the homestead has been estab-"lished must be raised, or it will be subject to forced sale for "satisfaction of such liens."   The same principle was clearly enunciated in Shepherd v. White, 11 Texas, 354; and in White v. Shepherd, 16 Texas, 172; Potshusky v. Kremkan, 26 Texas, 307; and Merchant v. Perez, 11 Texas, 22.   Had this lot been levied upon by an execution against McNeil at the time of the execution of the deed of trust, it would have held the property, and any claim of homestead would have been held fraudulent as against the levy.   (Stone v. Darnell, 20 Texas, 14.)

It is claimed that McNeil, during the summer of 1867, said to third parties that he intended to make the lot in controversy his homestead, and that fact is claimed as a sufficient evidence of a dedication to that purpose.   But, as this was a simple statement of McNeil, which was not so binding on him that he could not change his mind or alter his purposes, we are led to

5

the conclusion that his solemn deeds to the contrary establish the fact that he had, so far, at least, changed his mind, as to make his homestead rights subordinate to the deeds of trust. We are unable to discover any good reason or authority for holding this property subject to the homestead rights of the heirs of McNeil, and must therefore hold that the court erred in its instructions to the jury, and that the verdict and judgment are in this respect erroneous, and must be reversed.

There, however, appears to be no homestead for the minor children of McNeil and wife, deceased, and no property belonging to the estate of either, out of which an allowance in stead of a homestead could be made under the statute, excepting the property now in controversy, and the administrator and guardian of the minor children claim an allowance out of the proceeds of the sale of said property for that purpose. The judgment of the District Court will therefore be reversed, and be reformed so as to give Mrs. Hammett the land claimed by her, and that a judgment be rendered in favor of the appellants O. P. Bowles and Batts & Dean, and against the estate of D. L. McNeil, deceased, for the amounts severally claimed by them; and to order the sale of the remainder of the land, by the administrator, as under administrator's sale, and the proceeds thereof to be applied as follows: first, to pay to the guardian of the minor children of D. L. McNeil, deceased, the sum of two thousand dollars, in lieu of the homestead, and to apply the balance to pay off and cancel this judgment in favor of O. P. Bowles, which is secured by deed of trust on the premises, and then to satisfy the judgment in favor of appellants Batts and Dean, also secured by deed of trust; and that this judgment be certified to the probate court for observance.

Reversed and reformed.