WILLIAM CAMERON & CO. v. L. H. GEBHARD' ET AL.

No. 37.

1.  **Facts Evidencing Homestead.** — Gebhard and wife sold their homestead, which was the separate property of the wife.  With part of the proceeds they bought a vacant lot, intending it to be their future homestead.  Gebhard contracted with a builder to furnish material and to erect buildings on the lot, to be used as their residence.  The builder being unable, Gebhard bought the materials for the house, paying the greater part of the price.  At the time of the purchase of the materials there were no buildings or improvements upon the lot, but the material men knew that Gebhard and wife intended to occupy the lot as their homestead, and that the materials furnished were to be used in erecting buildings upon the lot.  The materials were so used.  The material men sought to fix a lien upon the house and lot under the statute, but no contract in writing was signed and acknowledged by the wife.  In suit to subject the house and lot to the lien for materials, *held*, that the house and lot was a homestead, in contemplation of law, when the debt was incurred.

2.  **Same—Intent—Homestead.**—Intent and accompanying act showing an active purpose to make a homestead in fact by residence is a dedication of homestead, in advance of actual occupancy.

3.  **Same—Cases Discussed.**—See review and discussion of the numerous homestead cases decided by this court.

ERROR to Court of Civil Appeals, Third District, in a case from McLennan County.

The complaint by the plaintiffs in error is: "Because the facts found by the court below, and adopted by the Court of Civil Appeals, do not show any such physical preparation or act of any kind as is necessary to fix a homestead as against the plaintiffs, who furnished the lumber and material for the erection of the building thereon. We think it too evident for discussion, that the declaration at or subsequent to the time of the purchase, of an intention to make the property a homestead, it having no improvements upon it of any kind, there being no physical preparation to make any improvements on it, can not of itself make a homestead exempt from the claim of the material men. The only other act done was the mere making of a contract with the contractor to erect the building; because it can not be considered material that a part of the purchase money for the lumber was paid at the time of the contract for the lumber. If the mere making of a contract with a third person to erect improvements on land, coupled with a declaration of the intention to make it a homestead, is sufficient to make it such as against creditors or lien holders, it is easy to be conceived that by making the contract to be performed at some long but definite time in the future, a debtor could indefinitely postpone his creditors, and prevent their appropriating property to the payment of their debts, upon the plea of making it his homestead, and could, when his convenience was promoted and after such hindrance of creditors, abandon his intention. It seems that this consequence could not be averted unless the courts are prepared to determine a length of time within which such contract could be completed. which it is not probable the courts would undertake to do. We submit that there is no reported case in which any such act, or in which any similar act, has been held sufficient to appropriate the property to homestead uses.	※	·※	※

The facts sufficiently appear in the opinion.

*L. C. Alexander*, for plaintiffs in error. — 1. The court erred in dismissing plaintiffs' suit and in holding that the property sought to be subjected to plaintiffs' lien was not subject thereto, because same was a homestead; because it appears from the facts found by the court that said property was not, at the time of furnishing the material for the price of which this suit was brought, a homestead, the property having never prior to said time been in any manner improved, occupied, nor by any act except a naked declaration, appropriated as a homestead.

Notice of homestead immaterial: Parr v. Newby, 73 Texas, 468.

Intention to occupy does not make homestead: Ratcliff v. Call, 72 Texas, 494; Archibald v. Jacobs, 69 Texas, 251; Crabtree v. Whiteselle, 65 Texas, 114; Gardner v. Douglass, 64 Texas, 76; Moreland v. Barnhart, 44 Texas, 280; Anderson v. McKay, 30 Texas, 190; Franklin v. Coffee, 18 Texas, 413; Swope v. Stantzenberger, 59 Texas, 387; Brooks v. Chatham, 57 Texas, 31; Bunton v. Palm, 9 S. W. Rep., 183.

2. If the premises were occupied as a homestead at the date of filing bill of particulars, not being a homestead at the time the lumber was furnished, the filing related back to the date of furnishing the material, and the premises could not meanwhile be made a homestead as against the lien. Implement Co. v. Electric Light Co., 74 Texas, 607; Trammell v. Mount, 68 Texas, 215; Huck v. Gaylord, 50 Texas, 582; Fagan & Osgood v. Ice Machine Co., 65 Texas, 331; Gage v Neblett, 57 Texas, 374; Brooks v. Chatham, 57 Texas, 31; Baird v. Trice, 51 Texas, 556.

3. If the wife had not consented to the purchase of the lumber, the fact that the lots were her separate property is immaterial, as her consent was not necessary. Const., art. 16, secs. 37–50; Rev. Stats., arts. 3164–3174.

*Scarborough & Rogers*, and *Pearre & Boynton*, for defendants in error. The lots in question are exempt from forced sale and from the lien asserted by plaintiffs in error, under the homestead laws of this State. Schneider v. Bray, 59 Texas, 670; Barnes v. White, 53 Texas, 631; Franklin v. Coffee, 18 Texas, 417; Gardner v. Douglass, 64 Texas, 78; Brooks v. Chatham, 57 Texas, 33; Swope v. Stantzenberger. 59 Texas, 390; Dobkins v. Kuykendall, 81 Texas, 181; Sheer v. Cummings, 80 Texas, 295, Magee v. White, 23 Texas, 180.

BROWN, ASSOCIATE JUSTICE.—Plaintiffs in error sued the defendants in error in the District Court, to enforce a material man's lien upon a certain lot in the city of Waco. The case was tried before the judge without a jury, and findings of the facts were made and filed on the written motion of the plaintiffs. The findings of the district judge were adopted by the Court of Civil Appeals. Judgment was given against plaintiffs, which was affirmed by the Court of Civil Appeals, and a writ of error granted by this court.

The facts are, briefly, that Mary Gebhard owned a lot in Waco as her separate property, which was the homestead of herself and her husband; they sold that homestead and purchased the lot upon which it is sought to foreclose the lien in this suit, with a part of the proceeds of such sale. At the time of the purchase, and at all times, they declared that they intended to make the lot so purchased their homestead. Gebhard made a contract with Turntine to build a house upon the lot, Turntine to furnish lumber and erect the building for a given price. Turntine was unable to purchase the lumber, and Gebhard entered into a contract with the plaintiffs to furnish to Turntine the lumber necessary for the building, the cost of the lumber to be deducted from the price agreed to be paid to Turntine. Defendant Gebhard transferred to plaintiffs a note which he had received for a part of the purchase price of his former homestead, as an advance payment on the lumber to be furnished. Plaintiffs knew at the

time that they agreed to furnish the lumber that defendants had sold their former homestead, and purchased this lot with the intention to make it their future homestead; that they had contracted with Turntine to build a residence upon the lot, and that the lumber to be furnished by them was to be placed in that residence. They furnished the lumber, which was used in erecting a residence on the lot, and the amount sued for is an unpaid balance on the lumber so furnished. There was no improvement upon the lot in question, and Gebhard had taken no steps to establish his homestead on it, other than the making of the contract with Turntine to build the house upon it. No contract in writing was made, but in all other respects the requirements of the law for fixing a lien on the property were complied with by plaintiffs.

The only question presented for our consideration in this case is, Was the lot in question the homestead of defendants at the time that the contract for the purchase of the lumber from plaintiffs was made? If it was not, the judgment should be reversed. If it was a homestead at that time, the judgment should be affirmed.

Upon the facts presented in this case, we hold that the homestead right in favor of defendants had attached to the lot sought to be subjected to the lien asserted, before the contract for the purchase of the lumber was made, and that plaintiffs in error having failed to make a contract in writing, signed and acknowledged as required by law, no lien was created upon the lot.

It is not necessary that we should in this case decide whether or not Turntine acquired a lien, or could without writing have fixed a lien on the lot.

Cases arising under homestead laws differ so widely in their facts that it is impossible to lay down any definite rules to govern in all cases that may arise. Each case must be determined upon its own peculiar state of facts; and oftentimes, with very slight difference in the facts, conclusions have been reached in different cases which present the appearance of conflict, when in fact there is none, the facts being understood.

Pope v. Graham, 44 Texas, 196, on first reading would seem to be to some extent in conflict with the conclusion announced in this case. But when the facts of that case are understood there is no such conflict. The statement given of the facts in Pope v. Graham in the published report does not show what the intention of Pope was as to the future use of the property, or that any intention in reference thereto had been formed at a date anterior to the making of the contract. Referring to the original record in that case, we find that the only evidence introduced on the trial relative to the homestead referred to the date of the trial. The opinion expressed upon that point was evidently based upon the conclusion that the homestead right was not asserted until after the contract for building was made. That this was the understanding of the judge who delivered

the opinion, is made clear by his reference to the case of Potshuisky v. Krempkan, 26 Texas, 309, in which the homestead right was not asserted until after the lien had attached.

In Franklin v. Coffee, 18 Texas, 413, Chief Justice Hemphill, delivering the opinion, said: " Nor would it be necessary to secure the exemption that a house should be built or improvements made. But there must be a preparation to improve, and this must be of such a character and to such an extent as to manifest beyond a doubt the intention to complete the improvement and to reside upon the place as a home." Again, in the same case, it is said: " In this case there was no house or home upon the land. The plaintiff had not resided there before or since his marriage. He had made no preparation or done no acts which would evince a fixed intention and purpose to select and appropriate the place as a home." The facts in that case justified the conclusion that there was no homestead, but the court announced a rule which has been followed in all subsequent cases.

These principles enunciated in that case have been recognized and applied by this court in the cases of Moreland v. Barnhart, 44 Texas, 280; Railway v. Winter, 44 Texas, 611; Barnes v. White, 53 Texas, 631; Brooks v. Chatham, 57 Texas, 33; Swope v. Stantzenberger, 59 Texas, 390; Gardner v. Douglass, 64 Texas, 76; Archibald v. Jacobs, 69 Texas, 251; Dobkins v. Kuykendall, 81 Texas, 183, and many other cases.

The case of Stone v. Darnell, 20 Texas, 11, was in fact decided upon the same principle as that enunciated in the case of Franklin v. Coffee. Darnell had not lived upon the land, but had sold a former homestead, and with the proceeds purchased the land in question, with the avowed purpose and intent on of making it his homestead, and he had made a contract for the building of a house on it. The court did not in the opinion put it upon that ground, but it is evident that these facts had a controlling influence upon the conclusion arrived at in the case. The opinion was likewise delivered by Judge Hemphill. It is most likely that he would be governed by the doctrine announced by him but a short time before. This court has so understood and interpreted that case.

In the case of Railway v. Winter, 44 Texas, 611, Chief Justice Roberts, referring to the case of Stone v. Darnell, said: " In the case of Stone v. Darnell such acts were done as were said to indicate the intention to appropriate the place as a home, and although not a home, literally, when levied on, but being such at the sale, it was exempt as a homestead."

In Barnes v. White, supra, there was no actual occupancy, but ownership with an intention to occupy, accompanied by preparation. The person claiming the homestead had partially constructed his house when he purchased the material to complete it, and the court held that no lien attached. The only difference in that case and the one under considera-

tion is, that a greater degree of progress had been made in the preparation to occupy.

In Dobkins v. Kuykendall, 81 Texas, 183, the claimant of the homestead had never lived upon the land, but declared his intention to make it his home. He hauled some logs and placed them on it, but not being able to complete the house, suspended work and rented lands at another place, and made no further effort to occupy it for a year. It was held, that the homestead right attached to the land. In that case there was not so much preparation as in this. There a foundation was laid and a few logs hauled; in this a contract had been made for the construction of the *entire* house. The diligence is wanting in that case that distinguishes this case. There the work was suspended for more than a year, while in this case the diligence went to the point that defendant in error, after finding that his contractor could not purchase lumber, stepped in and made the purchase for him.

In Scott v. Dyer, 60 Texas, 135, the party asserting the homestead right had lived upon a tract containing four acres in Paris, and had sold the improved part and moved away, but with the intention to make a home upon the remainder. No act was done to evidence this intention. The land was levied upon and sold under execution. The court held that the land was the homestead of the defendant in the suit. That is a case in which the bare intention kept the homestead right alive, when the house had been sold and the party took no steps to carry the intention into effect.

In Gardner v. Douglass, 64 Texas, 76, the party asserting the homestead claim had purchased an improved place for the purpose and with the avowed intention of making it a homestead. It was leased and he could not get possession of it at the time. It was seized before he moved upon it, and the court held that his intention to occupy, with the fact that he could not get possession, were sufficient to give the homestead exemption.

This court said, in Swope v. Stantzenberger, 59 Texas, 390: "In a great majority of the States, it is held that an actual occupation of the land must concur with the dedication, as a prerequisite to impressing upon it the homestead character. But a more liberal rule prevails in this State," and proceeds to quote from Franklin v. Coffee, and other cases, to show what that more liberal rule is.

It is held in Michigan more liberally even than in this State. The doctrine of that State is laid down thus: "Actual residence upon property is not an indispensable condition to its being in law a homestead, and as such exempt from levy and sale under execution; the question is, whether on the facts of the particular case, the land became a homestead in a legal sense before the levy was made upon it. To bring it within the exemption, when it is not actually occupied as such at the time of the levy, it

must satisfactorily be made to appear that the intention in good faith exists to occupy it as such, and the intention must have existed prior to and at the time of the levy.    Bowles v. Hoard, 71 Mich., 154; Reske v. Reske, 51 Mich., 541; Mills v. Hobbs, 76 Mich., 125.

In Wisconsin the rule is stated thus:    "The bona fide intention of acquiring the premises for a homestead, without defrauding any one, evidenced by overt acts in fitting them to become such, followed by actual occupancy in a reasonable time, must be held to give to the premises answering the description prescribed in the statute the character of a homestead."    Scofield v. Hopkins, 61 Wis., 375.    It is no doubt true that a majority of the States hold a more rigid rule against the homestead claim, but we believe that the better reason is with the doctrine of our own court.

In Archibald v. Jacobs, 69 Texas, 251, Chief Justice Stayton, delivering the opinion, said:    "Where no homestead dedicated by actual occupancy exists, effect must be given to ownership, intention, and preparation to use for a home; otherwise one indebted might never be able to secure a home for a dependent family."

Intention alone can not give a homestead right; but it is at the same time equally true that all other things combined can not give it without the intention to dedicate it to the uses of a home.    Valuable and costly improvements, coupled with long continued possession, without the existence of a bona fide intention to make it a home, will not make it such. But the placing upon the premises unhewn logs for the purpose of erecting thereon the humblest cabin, with a bona fide intention to occupy as soon as the cabin can be built, secures the right.

From these decisions it is apparent, that intention is almost the only thing that may not be dispensed with in some state of case; and it follows that this intention in good faith to occupy is the prime factor in securing the benefits of the exemption.    Preparation—that is, such acts as manifest this intention—is but the corroborating witness to the declaration of intention, the safeguard against fraud, and an assurance of the bona fides of the declared intention of the party.

If a homestead can not be acquired until it is occupied, then no one can acquire a homestead exempted from forced sale unless he buys an improved place; and then he must have a race with the sheriff for possession.    The unimproved lands of the country and the vacant lots of our cities can not be acquired for the purpose of making a home by the man who is indebted, except at the risk of turning it over to a creditor.    If a man owes nothing, or is able to pay all that he owes, he does not need the exemption; if he has other property, he can protect his home by pointing out that other property for sale; but if he has nothing but the homestead, he comes within the necessity of the constitutional provision, and to him is the chief value of exemption.

Defendants in error showed their good faith by investing the proceeds of sale of their former homestead in this lot, and at once proceeding, in accordance with their declared intention, to secure the erection of a residence upon it. What more diligence could have been exercised in carrying that intention into effect, or what act could have been done that would more satisfactorily have proved that the intention was in good faith to dedicate it to homestead uses?

Plaintiffs in error could have secured a contract in writing, as required by law. They knew that the lot was to be the homestead; knew all the facts. The wife might not have been willing to encumber this lot, but preferred to have a more humble home, free from lien. She was entitled to the privilege of deciding the matter for herself.

The judgments of the Court of Civil Appeals and of the District Court are affirmed.

*Affirmed.*

Delivered June 24, 1893.