### James A. Parker v. J. R. Cook et ux.

#### Decided October 21, 1909.

**1.—Homestead—Designation—Intent to Occupy.**

Intention alone is not sufficient to impress upon unoccupied premises the homestead character. It must be accompanied by some conduct or overt act on the part of the claimant that may justly be considered reasonable diligence in carrying into execution the intention to actually use and occupy the premises for some of the purposes of a home.

**2.—Same—Cases Discussed.**

Gardner v. Douglass, 64 Texas, 78, and Scott v. Dyer, 60 Texas, 135, distinguished, and numerous Texas cases on homestead discussed and reconciled.

**3.—Homestead—Designation—Case Stated.**

The head of a family, a carpenter and not a farmer, owning and residing on a house and lot in town, purchased a small farm in the country, partly improved and having a dwelling house. This he subsequently mortgaged, designating the premises he occupied in town as his residence. The latter he subsequently sold and abandoned. His judgment creditors levied executions on the farm, and he obtained injunction against the sale on the ground that it was homestead. At the time he sold the town residence, the farm was under lease, which subsequently expired. He let the premises again for a year and removed with his family to another town to follow his trade there. He testified to a declared intention from the time of such sale to make the farm his home when he could make money to pay off the indebtedness and the conditions should be such that he could make a living for his family there, but to no definite time for such removal nor to any act done toward carrying out his intention. Held, that the proof showed no homestead right in claimant, and final judgment should be rendered on appeal dissolving the injunction.

Appeal from the District Court of Red River County. Tried below before Hon. Ben H. Denton.

*Geo. Morrison* and *Chambers & Black,* for appellant.—The evidence was insufficient to show that the land was appellee's homestead. Constitution of Texas, sec. 51, art. 16; Dinwiddie v. Tims, 114 S. W., 400; Autry v. Reasor, 102 Texas, 123; Johnson v. Burton, 39 Texas Civ. App., 249; Barnes v. White, 53 Texas, 631; Wolf v. Butler, 8 Texas Civ. App., 468; Bente v. Lange, 9 Texas Civ. App., 328; Blun

v. Rodgers, 78 Texas, 530; Steves v. Whitaker, 38 S. W., 1026; Crabtree v. Whitselle, 65 Texas, 114.

*Kennedy & Robbins,* for appellees.—The premises in controversy are, and were at the time of the levy of the executions, the homestead of appellees and not subject to sale. Scott v. Dyer, 60 Texas, 135; Van Ratcliff v. Call, 72 Texas, 492; Cameron v. Gebhard, 85 Texas, 610; Evans v. Daniel, 25 Texas Civ. App., 362; Rutherford v. Cox, 25 Texas Civ. App., 499; Davidson v. Jefferson, 68 S. W., 823; Hardin v. Neal, 32 Texas Civ. App., 335; Bell v. Greathouse, 20 Texas Civ. App., 478; Foley v. Holtkamp, 28 Texas Civ. App., 123.

HODGES, ASSOCIATE JUSTICE.—The appellant was the owner of two judgments against the appellee, J. R. Cook, upon which executions were issued in April, 1908, and levied upon 61 acres of land situated in Red River County, Texas, as the property of the appellee, Cook. After the levy the officer making it advertised the property for sale, according to law. Before the sale day arrived this suit was instituted by J. R. Cook and his wife for the purpose of having the sale enjoined, alleging that the land was their homestead and not subject to the executions. The petition was presented to the district judge and a temporary order granted restraining the officer from proceeding with the sale, which order was, upon final hearing before the court in term time, made perpetual. The case was tried before the court without a jury, and the findings of fact made and filed are substantially as follows:

1. That the appellant was the owner of the judgments mentioned, and executions were issued and levied upon the property in controversy.

2. That the appellee, J. R. Cook, was the head of a family, and had been since 1892.

3. That since the marriage of Cook and his present wife they had lived upon and occupied as their home a house and lots in the city of Clarksville till November, 1907. That this property so used as their home was the community property of Cook and a former wife, the present wife having no interest in it beyond a homestead claim.

4. That after their marriage Cook and his present wife purchased and improved the land in controversy, placing thereon a house and putting some of the land in cultivation, but that they had never lived on it or occupied it as a home.

5. That three or four years prior to the time of the trial the appellee, J. R. Cook, procured a loan of $500, to secure which he executed a deed of trust upon the 61 acres involved in this suit. That this loan was still unpaid. That at the time the loan was procured Cook and wife designated the house and lots in Clarksville upon which they lived as their homestead.

6. That the appellee was a carpenter, following his trade when he could find employment. That some time in November, 1907, on account of dull business in his line, and for the purpose of obtaining money to meet his obligations and to support his family, Cook placed the 61 acres of land on the market, but that before the levy of the

writs issued as hereinbefore stated he succeeded in selling his home in Clarksville.

7. That Mrs. Cook was induced to sign the deed to the Clarksville property by the promise of Cook that they would move on to and occupy the 61 acres as a home, and that she could have that as a home for herself and her children. That Cook immediately thereafter took the 61 acres off the market and had openly claimed it as his homestead.

8. That at the time it was so designated by Cook as his home the land was occupied by tenants and possession could not be obtained till January 1, 1908.

9. That Cook, failing to get employment at home, first decided to leave his family at their home, having for that reason refused to rent the place until after January 1, 1908, but subsequently concluded to move with his family to Arlington to reside temporarily while engaged in his employment. He thereupon rented the place for the year 1908, but no longer.

10. That Cook sought employment at Ft. Worth for the purpose of supporting his family and obtaining means wherewith to pay off the mortgage debt on his place. That the 61 acres were ready for occupancy, needing no improvements for that purpose, but that the debt was still unsatisfied.

11. That after the sale of their home in the city of Clarksville appellees openly and notoriously claimed the premises in controversy as their home, no other having been acquired, and openly expressed their intention to occupy it as soon as the indebtedness against it could be paid off. That the evidence failed to show that the appellant did not have full knowledge of these facts at the time his judgments were rendered and executions issued.

The twelfth finding is substantially a repetition of what is embodied in one or more of the preceding.

From the foregoing the court concluded as a matter of law that the homestead character was impressed upon the premises at the time the writs were levied, and for that reason the land was not subject to execution.

The court having found as a fact that the homestead right existed at the time the writs were levied upon the property, and that the appellant, Parker, had failed to show that he had no notice of the intention of Cook and wife to use and occupy the premises as a homestead, it becomes our duty to examine the evidence and ascertain whether or not it is sufficient to justify the findings made and the conclusion of law based thereon. West End Town Co. v. Grigg, 93 Texas, 451, 56 S. W., 49. An examination of the testimony embodied in the statement of facts shows that the court in making his findings placed upon the testimony of the appellees, Cook and wife, the most favorable construction that was possible, and indulged every inference from the language used that was capable of supporting the conclusion reached. There are other facts, however, not included in the court's findings, which we think should be considered in disposing of the case. The petition alleges, and there seems to be no controversy upon that issue, that the tract of land in question was a farm situated two

miles south of the city of Clarksville in Red River County. It is shown by the evidence that it was sufficiently improved to permit the use and occupancy by the family, without anything else being added. There was a dwelling upon it, and some of the land was fitted for cultivation. About November 1, 1907, according to Cook's testimony, he sold his homestead in the city of Clarksville and then for the first time conceived the intention of making this farm his homestead in the future. Up to that date it had by an express designation been excluded from the premises composing the homestead proper. He did not move upon the premises at that time because they were rented for the year 1907 and he could not get possession. About the first of the following year he decided to go to Arlington, in Tarrant County, in search of employment, and to leave his family in Red River County, but subsequently he decided to take his family with him to Tarrant County. He says: "I never did anything towards moving out to that place in the country, except to intend to move out there. I did no overt act—only decided to move out there; and then I moved out to Tarrant County, where I now live, and went to work at the carpenters' trade in Fort Worth. I am still engaged in this business. I intend to move out to this farm some time. I have had chances to rent it out this fall several times and I would not do it. At the time I moved to Tarrant County I did not know when I was going back, further than when I got my job done. When I went out there I had no fixed intention in my mind as to the time I would come back and occupy this land, for I had rented it. When I moved out to Arlington I said I was going out there to get work; that I could not get work here; that my business was a carpenter's and not that of a farmer, and that I was going out there not only to get money to pay debts, but to make a living for my family, and that I could not make a living for my family here. . . . I told everybody I was going out there to live until I could get work here to make a living at my trade. I was in debt here and could not get out. I knew that I could not make a living out there at that little place and that is the reason I left here. If I had known I could make a living out there I would have went right to the farm. I did not know that I could make it, and therefore went to Fort Worth."

The foregoing testimony of Cook presents this situation: A carpenter who disclaims being a farmer and who avows his intention of continuing to work at his trade as a means of providing a living for his family, refusing to reside upon a farm because of the fact that he can not make a living upon it, and in effect saying that he does not intend to occupy it as a home until such time as he can pursue his calling in that vicinity under conditions sufficiently remunerative to enable him to make money enough to support his family and pay his debts. The excuse which he gives for not occupying the premises is, the absence of one of the very conditions which makes the acquisition of the homestead and its use and occupancy desirable—its fitness as a place to live upon and support his family. The only evidence with which we are furnished of any bona fide intent upon the part of Cook to use and occupy the premises as a homestead consists of the statements made by himself and wife of what they intended to do at some in-

definite time. The question then is, Are these sufficient to support a finding that the property was in fact a homestead at the time the writs were levied?

After stating that the homestead not in a town or city shall consist of not more than 200 acres, and in a town or city of lot or lots not exceeding in value $5,000 exclusive of improvements, the Constitution contains this provision: "Provided that the same shall be used for the purpose of a home or place to exercise the calling or business of the head of the family; provided also that any temporary renting of the homestead shall not change the character of the same when no other homestead has been acquired." A literal application of the language here used would restrict the homestead right to premises actually used for some of the purposes of a home, except in cases of temporary renting after the right has once been acquired, and when no other homestead has been provided. It frequently happens that in the acquisition of property intended for use as a homestead an unavoidable interval occurs between the acquisition and the actual use or occupancy for those purposes. In order to give full effect to this beneficent provision of the Constitution and prevent the defeat of *bona fide* efforts to acquire a home, our courts have adopted the policy of treating this interval, under certain conditions, as a kind of constructive occupancy, and in this way have extended the homestead exemption to times anterior to the period of actual use and occupancy. In doing so, however, they have undertaken to safeguard this right against being used as a means ·of perpetrating a fraud upon creditors, and have exacted in each particular case where it is sought to impress the homestead character upon property in the advance of occupancy and use, there be satisfactory evidence of the utmost good faith in ·the homestead intention, accompanied by some efforts to carry such intention into execution. In the case now under consideration the evidence is undisputed that the claimant of the homestead did nothing toward perfecting his homestead right, further than to conceive and entertain the intention to, at some time in the future not definitely fixed, occupy the premises as a home for his family.·

It has been repeatedly held by the courts of this State that intention alone is not sufficient to impress upon unoccupied premises the homestead character. Franklin v. Coffee, 18 Texas, 416, 70 Am. Dec., 292; Wolf v. Butler, 8 Texas Civ. App., 468, 28 S. W., 51; Barnes v. White, 53 Texas, 629; Autrey v. Reasor, 113 S. W., 748; Dinwiddie v. Tims, 114 S. W., 400; Johnson v. Burton, 39 Texas Civ. App., 249, 87 S. W., 181; Blum v. Rogers, 78 Texas, 530, 15 S. W., 115; Cameron v. Gebhard, 85 Texas, 616, 34 Am. St. Rep., 832, 22 S. W., 1033; Fort v. Powell, 59 Texas, 322; Anderson v. McKay, 30 Texas, 188; Gardner v. Douglass, 64 Texas, 78; Bente v. Lange, 9 Texas Civ. App., 328, 29 S. W., 813; Collier v. Betterton, 8 Texas Civ. App., 479, 29 S. W., 490; Batts v. Scott, 37 Texas, 65.

We think the true rule deducible from the adjudicated cases is not that intention alone, under all circumstances, is insufficient to constitute a homestead dedication, but that in each instance the intention must not only be *bona fide* but must be accompanied by some conduct or some overt act on the part of the claimant that may justly be con-

sidered reasonable diligence in carrying into execution the intention to actually use and occupy the premises for some of the purposes of a home. The legal functions of the overt act, or conduct, which it is said should accompany the intention in order to impress the homestead character upon unoccupied premises, are not solely to the purpose of showing the *bona fides* of the intention, but to manifest the exercise of reasonable diligence to put that intention into effect by actually using the premises as a home in the manner contemplated by the Constitution. It must be borne in mind that the real object of this provision is to extend the exemption only to premises used for some of the purposes of a home, and not to exempt a designated amount of realty. Autrey v. Reasor, 12 Texas, 123, 113 S. W., 748; Blum v. Rogers, 78 Texas, 530, 15 S. W., 115; Franklin v. Coffee, 18 Texas, 417, 70 Am. Dec., 292. Viewed in that light all of the seeming inconsistencies appearing in the different cases where these questions have been passed upon disappear. We can also appreciate the full force of the language of the court in Cameron v. Gebhard, supra, wherein it is said: "Cases arising under the homestead law differ so widely in their facts that it is impossible to lay down any definite rules to govern in all cases that may arise; each case must be determined upon its own peculiar state of facts."

In Gardner v. Douglass, above referred to, Gardner purchased an improved place, intending it for a home, a part of the purchase price being derived from the sale of a former homestead. The premises were under a lease at the time, and he could not get possession till the lease expired. Before that time an execution was levied upon the premises, at the instance of a creditor, to satisfy a pre-existing debt. As soon as the lease terminated Gardner manifested his good faith and diligence by moving on to the place and beginning to use it as a home. The court held that his homestead right dated from the time of the purchase, by virtue of the intent then existing to so use the property. It uses in that connection this significant language: "As the appellants acted in the best of good faith in purchasing this improved property for a homestead, and upon the expiration of the lease took prompt possession and have ever since occupied it as such, under the facts and circumstances it might be considered that the occupancy followed the purchase in such reasonable time as would vest the property with the homestead quality from the time of its purchase," etc. Here the only element required to constitute the homestead character which existed anterior to the levy of the writ was the *bona fide* intention of the plaintiffs in the suit. But particular stress seems to be placed upon the fact that actual occupancy followed as soon as practicable.

In the Cameron-Gebhard case, which seems to be relied upon by the appellees as being decisive of the question here involved, Gebhard purchased an unimproved lot for the express purpose of erecting thereon a home for himself and family. He made a contract with Turntine to furnish the material and build the house at an agreed price. Subsequently Turntine, being unable to supply the material, agreed to another contract by which Cameron was to supply the material for a stipulated price, and that sum to be deducted from what

Turntine was originally to get for constructing the building. The suit was by Cameron, after the completion of the house, to subject it to a lien for the material so furnished. The evidence showed that there was no written contract executed by Gebhard and wife in the manner required to operate as a lien upon the homestead. The court held that the homestead rights of Gebhard arose and dated from the time he made the contract with Turntine to build the house, and that the subsequent agreement with Cameron to furnish the material, not being in conformity with the requirements prescribed for binding the homestead, did not create a lien such as could be enforced against the homestead. Here we have not only an intention to use and occupy the premises claimed as the homestead, but a contract with a builder for the erection of a house thereon, followed by actual occupancy.

The case of Scott v. Dyer, 60 Texas, 135, cited by appellees, is, we think, clearly distinguishable from the case at bar. There the effort of the creditor was to subject to the payment of his debt a lot which had once formed a part of a plat of land which had been used and occupied as a homestead, and the issue was as to whether the homestead right had been abandoned by selling that portion upon which the residence was situated. The claimants testified that they still intended to resume occupancy, and there was no evidence to overcome their testimony. There is a distinction between the abandonment of a homestead once dedicated by actual occupancy and the cessation of the inchoate homestead right resting only upon intention. Kempner v. Comer, 73 Texas, 202, 11 S. W., 194. The perpetration of the homestead right against the charge of abandonment on account of temporary absence, after having been once perfected by actual use and occupancy of the premises, is protected by another clause of the Constitution, which provides that any temporary renting of the homestead shall not change the character of the same when no other homestead has been acquired.

Where the homestead right is made to rest upon intention as distinguished from actual use and occupancy, there is strong reason for requiring the accompaniment of some overt acts on the part of the claimant, evidencing a purpose or effort to carry his intentions into effect. Use and occupancy are open to observation and consist of facts which are easily proved or combated. But where the homestead right is made to rest on mere intention the situation is otherwise. No one would be willing to swear that another did not in fact have a certain intention regarding the occupancy of premises, and in the majority of instances the difficulty of disproving intention by circumstances is so great as to render the undertaking practically fruitless. Hence, unless some rule should be adopted by the courts requiring a secret intention to be accompanied by some physical conduct open to observation, the liberality of the construction placed by them upon this section of the Constitution would furnish a cloak easily available for concealing fraudulent transactions.

In the case before us, whatever may be said of the intentions of Cook as to occupying the premises in question as his homestead, it can not be claimed that he did anything or made any effort toward carrying those intentions into effect. Certainly it can not be said that he had to "race with the sheriff for possession." Applying to the facts

of this case the rule which seems to have been adopted in this State regarding the homestead rights in premises in advance of occupancy, and considering the rationale upon which it is predicated, we do not think the evidence was sufficient to support the judgment of the court. It is admitted that the place was improved and ready for occupancy. The lease upon it, which at one time operated as a barrier to possession, had expired, and there was nothing which hindered the actual occupation of the land had the appellees desired to do so. This condition existed from the first day of January, 1907, till the day of the trial, about December following. The excuse given is that it was too small, and that the owner could not make a living upon it for his family. Is it reasonable to permit the claimant of an improved rural homestead to excuse his failure to occupy the premises in the first instance, and thereby complete the inchoate homestead right originating with the intention, by saying that the premises were insufficient to supply the essential elements of a home in the country? Such an excuse would not only justify temporary absence, but the permanent abandonment of the intention, if any ever existed. There is, we think, a radical difference between the reasons for a failure to take actual possession of premises and use them as a home, based upon their unimproved condition, or inability at the time to get possession, or the existence of some fact or condition intervening consistent only with temporary absence, and that given in this case, founded upon the unfitness of the premises, after being improved, to meet the requirements of a home. The tract of land was a farm, but Cook was a carpenter, not a farmer. He intended to occupy the farm whenever conditions changed so that he could go there and make a living for his family and money to pay his debts. Such a time might never come; there was no evidence to show that there was any good reason for expecting it in the near future. To sustain the homestead claim in this case would be carrying the effect of intention alone beyond the limits fixed by any adjudicated case we have examined. Even in those decisions rendered in the early history of the State, when the commercial value of the homestead was comparatively small, and when the sparsely inhabited country furnished the best of reasons for encouraging the acquisition of homes by the adoption of a liberal policy in protecting homestead rights, the courts have not gone so far as to furnish a precedent for sustaining the judgment in this case. We do not feel that the conditions existing at the present time, when the commercial value of the usual homestead allowance has been vastly enhanced by the growth of population and industrial development, and the temptation to use it as a cloak for fraud has been increased in the same ratio, that we should go beyond the bounds already established by precedents.

In as much as the case seems to have been well developed, and no good purpose could be subserved by remanding, the judgment of the District Court will be reversed and judgment here rendered dissolving the writ of injunction granted by the court below; and all costs, both of this court and of the court below, will be adjudged against the appellees, Cook and wife.

*Reversed and rendered.*