### GARCIA v. UVEDA. (No. 5896.)

(Court· of Civil Appeals of Texas. San Antonio. Oct. 24, 1917.)

HOMESTEAD &#9755;32—ACQUISITION—INTENTION.

Appellee traded goats purchased from appellant for lots. Appellant sued on a note given in part payment for the goats. Prior to suit appellee had the lots grubbed, and thereafter before judgment marked places for post holes. After execution post holes were dug and the lots fenced. Appellee testified that he intended to make the lots his homestead as soon as he had money for improvements. Appellee was a married man with family, and the lots were the only real estate he owned. *Held*, though intention to make land a homestead, accompanied with acts preparing it for occupancy, may impress it with that character, the lots involved were not exempt as appellee's homestead; mere intention alone, unaccompanied by acts showing the land was set apart solely for homestead purposes, being insufficient to constitute a homestead dedication.

Appeal from District Court, Duval County; V. W. Taylor, Judge.

Action between Sixto Garcia and Ramon Uveda. From a judgment for the latter, the former appeals. Reversed and rendered.

J. F. Clarkson, of San Diego, for appellant. S. H. Woods, of Alice, for appellee.

FLY, C. J. A permanent injunction was obtained in this case by appellee against the sale of three certain lots of land in San Diego, Duval county, under and by virtue of a writ of execution issued out of the district court of that county and levied on the said three lots. The sale was enjoined, on the ground that the lots constituted the homestead of appellee. From that judgment this appeal has been perfected.

The facts show that in 1914 appellee bought 1,000 goats from appellant, giving in exchange therefor his storehouse, which was his homestead, and merchandise and a promissory note for $1,200. A balance due on that note formed the basis of the judgment obtained by appellant against appellee, under which the execution was issued and levied on lots 10, 11, and 12 in San Diego, for which appellee had traded a portion of the goats. The proceedings under the judgment were regular in every respect. The lots were purchased by appellee on June 1, 1915, and the execution was levied upon them on July 3, 1916, more than a year after the purchase. The lots were of the value of $300. Appellee

is a married man, as found by the trial court, with "at least three children." At some time prior to January, 1916, appellee "caused the lots to be grubbed," paying for the labor the sum of $10.50. Nothing further was done about the lots until May, 1916, several months after the suit was instituted, when appellee made marks on the ground with a shovel or pickax, to indicate where he might at some time put post holes. After the execution had been levied upon the lots and the day of sale fixed, and five days after a temporary injunction had been issued restraining the sale of the lots, appellee began having post holes dug in order to erect a fence about the lots. The fence was built. Nothing whatever was done to the lots evidencing a desire to improve them, except the grubbing, which appellee swore was begun on June 14, 1915, before the property was seized under execution and the day of sale fixed. Appellee testified that he intended to make the lots his homestead as soon as he had the money to make improvements. He has no other real estate. No improvements had been put on the lots before the execution was levied, unless the grubbing was an improvement.

The courts of Texas have gone to the extent, in their desire to protect the homesteads of families, of dispensing with actual occupancy as a necessary concomitant to impress land with the homestead character, and extending such character to land when there has been shown an intention to make a homestead, accompanied with acts of preparing the land for actual occupancy. Mere intention at some future time to occupy a lot or parcel of land for homestead purposes, such occupancy being contingent upon financial ability to build improvements, would not constitute a homestead. There must be an intent to occupy the land concurring with acts of improvement indicating such intent within a reasonable time to occupy. Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832; Town Co. v. Grigg, 93 Tex. 456, 56 S. W. 49; Gallagher v. Keller, 4 Tex. Civ. App. 454, 23 S. W. 296; Johnson v. Burton, 39 Tex. Civ. App. 249, 87 S. W. 181; Parker v. Cook, 57 Tex. Civ. App. 234, 122 S. W. 419; Parsons v. McKinney, 133 S. W. 1085; Wiseman v. Watters, 142 S. W. 134; McDowell v. Northcross, 162 S. W. 16; Taylor Feed Pen Co. v. Bank, 181 S. W. 534, 535. The acts performed in connection with the unoccupied land claimed to be homestead are indicative, both of good faith, of the intent to occupy, and of a reasonable diligence to execute the intention. We think the doctrine of Texas courts is stated by Judge Hodges in the cited case of Parker v. Cook, as follows:

"We think the true rule deducible from the adjudicated cases is, not that intention alone, under all circumstances, is insufficient to constitute a homestead dedication, but that in each instance the intention must not only be bona fide, but must be accompanied by some conduct or some overt act on the part of the claimant that may justly be considered reasonable dili- gence in carrying into execution the intention to actually use and occupy the premises for some of the purposes of a home. The legal functions of the overt act, or conduct, which it is said should accompany the intention in order to impress the homestead character upon unoccupied premises, are not solely to the purpose of showing the bona fides of the intention, but to manifest the exercise of reasonable diligence to put that intention into effect by actually using the premises as a home in the manner contemplated by the Constitution."

Stripped of the unnecessary verbiage with which the rule has been somewhat obscured, it seems that it should be that intention is sufficient to fix a homestead right in unoccupied land, but that the mere oral testimony of witnesses unaccompanied by acts of the owner in connection with the land which tend to show that the land is being prepared for homestead, and no other purposes, such acts being put into effect within a reasonable time, will not show intention. In other words, intention can only be shown by open, public, manifest acts in connection therewith, that show that the land has been set apart for homestead, and no other purposes. Land can be cleared and cultivated for other purposes than those of a homestead, and may have houses and other improvements placed upon it, and yet the land be for sale, or be kept for obtaining an income therefrom. The improvements made must be substantial in character, must be made in a reasonable time after the acquisition of the land, and must lead to the conclusion that they were intended when built to form a part of a homestead. The intention must be a continuing one to the time the issue of homestead vel non arises, because the lapse of time might have a tendency to indicate an abandonment of the original intention.

It is expanding the homestead right to an extent perhaps as far as could have been contemplated by the Constitution makers, when land never occupied by the owner or any one else is impressed with the homestead character by intention to occupy, proven by the proper facts and circumstances. The rule should not be enlarged. No case, among the many liberal ones as to homestead, which have expanded the doctrine almost to the breaking point, has been found that has permitted a judgment to stand on evidence of preparation for a homestead as sparse and unsatisfactory as in this case. In every case brought to the notice of this court there had been some peculiar circumstance which marked the improvement as one probably intended for a homestead, such as the fencing of lots and planting of shade trees. The latter might be planted on a lot intended for other than homestead purposes, but usually such is not the case, and such act, taken with others renders it probable that the preparation is being made for a homestead.

The evidence in this case shows no preparation for a homestead, before the execution was levied, except the clearing of the land, more than a year prior thereto, at a cost of $10.50. The grubbing of the land did

not in any way point to a homestead, for land is often cleared without the design ever being formed to fix a homestead. When the clearing of the land is looked at in connection with the fact that nothing whatever was done in connection with the land, until after the execution was levied, it has not probative effect. The land was cleared in the early part of June, 1915, and it was seized under execution nearly 13 months afterwards. The marks made in May, 1916, for post holes, on the ground, with a shovel, were too trivial and indefinite to have any probative force. The fence was built after the property had been seized and the temporary writ of injunction granted, and should not be considered in ascertaining whether or not the land had become a homestead. There was no present intention upon the part of appellee to occupy the land; but even in his own mind the intention was to so occupy it at some indefinite time in the future, when he might make enough money to improve the land. As a means to this end it seems that in his first 13 months of ownership he had expended $10.50 on the land. The evidence fails to show that the lots were the homestead.

The judgment is reversed, and judgment here rendered in favor of appellant.