**COCKE v. ESPINOZA et ux.   (No. 7206.)**

(Court of Civil Appeals of Texas. San Antonio.
Nov. 5, 1924.   Rehearing Denied
Dec. 1, 1924.)·

**1. Homestead ⬤≈38 — When homestead right attaches stated.**

Homestead right attaches when owner's intention, coupled with definite acts, to make land a homestead, is formed in good faith prior to levy and sale.

**2. Homestead ⬤≈38—Some preparation to improve property necessary.**

Some preparation to improve the property is necessary to dedicate a tract of land to homestead purposes.

**3. Homestead ⬤≈57'(3)—Evidence held insufficient to sustain contention of intention to make land homestead.**

Evidence of preparation to improve land *held* insufficient to sustain contention of intention to make land homestead.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Suit by M. G. Espinoza and wife against Emmett B. Cocke. From a judgment for plaintiffs, defendant appeals. Reversed in part, and rendered.

Templeton, Brooks, Napier & Brown, Ben H. Kelly, and Emmett B. Cocke, all of San Antonio, for appellant.

Davis & Wright, of San Antonio, for appellees.

FLY, C. J. This is a suit instituted by appellees against appellant to recover certain land in the city of San Antonio, described as the west one-half of lots 8, 9, and 10, block 5, New City Block. The·cause was submitted to a jury on special issues, and on the responses thereto judgment was rendered in favor of appellees for the land.

The jury found that the land was of the market value of $1,500 on October 5, 1920; that the total indebtedness against it was $306; and that appellees had formed an intention, prior to the date of the levy and sale of the lots by virtue of an execution under which appellant claims title, to use and occupy the lots as a homestead and that such intention existed at the time of such execution sale. Appellees elected to recover under the first count of their petition, a statutory action in trespass to try title, and under the third court, which set up homestead rights on the date of the forced sale. They abandoned the right to recover under the second count, which was a proceeding to set aside the sale for gross inadequacy of consideration, and in connection with which count $285 had been tendered into court to pay off the amount paid by appellant for the land at execution sale. In addition to rendering judgment for the land in favor of appellees, the money paid by them into the registry of. the court was ordered to be returned to them.

[1] If appellees at the time of the levy and sale under execution of the lots had formed the intention, in good faith, coupled with certain definite acts, to make a homestead of the lots, then the homestead right attached.

[2] While some cases have held that bare intention will dedicate a tract of land to homestead purposes, the fixed rule of the Texas decisions has been and is that there must be some preparation to improve the property. Franklin v. Coffee, 18 Tex. 413, 70 Am. Dec. 292; Stone v. Darnell, 20 Tex. 11; Potshuisky v. Krempkan, 26 Tex. 307; Moreland v. Barnhart, 44 Tex. 280; Railway v. Winter, 44 Tex. 611.; Barnes v. White, 53 Tex. 631; Brooks v. Chatham, 57 Tex. 33: Swope v. Stantzenberger, 59 Tex. 390; Gardner v. Douglass, 64 Tex. 76; Archibald v. Jacobs, 69 Tex. 251, 6 S. W. 177; Dobkins v. Kuykendall, 81 Tex. 183, 16 S. W. 743; Cameron v. Gebhard, 85 Tex. 610, 22 ·S. W. 1033, 34 Am. St. Rep. 832; West End. Co. v. Grigg, 93 Tex. 456, 56 S. W. 49; Garcia v. Uveda (Tex. Civ. App.) 198 S. W. 167; Gallagher v. Gallagher, 214 S. W. 516. As said by this court in Garcia v. Uveda:

"Stripped of the unnecessary verbiage with which the rule has been somewhat obscured, it seems that it should be that intention is sufficient to fix a homestead right in unoccupied land, but that the mere oral testimony of witnesses, unaccompanied by acts of the owner in connection with the land which tend to show that the land is being prepared for homestead, and no other purposes, such acts being put into effect within a reasonable time, will not show intention. In other words, intention can only be shown by open, public. manifest acts in connection therewith, that show that the land has been set apart for homestead and no other purposes."

[3] The evidence showed that appellees bought the three half lots in dispute on February 10, 1916, from Victor and Ida V. Burger, and on October 5, 1920, the land was regularly sold under execution and was purchased by appellant for the sum ·of $100. M. G. Espinoza swore that he formed the intention to build a house on the lots in 1918, two years after he purchased it, and that he spoke to contractors about it. In the same year he put down some posts and put· "just one strip of lumber around the posts." He did not take down· the strip and posts, but they were stolen in the latter part of 1918, and never replaced. He swore that after building the one strip fence:.

"The only thing that I have done is to keep the lots in condition, keep the lots · cleaned, keep the brush off of them, but this year I did not do that." ·

A contractor swore that·he figured on a house for appellees in 1918,·but nothing was

done. Espinoza also swore that he leveled some dirt on the lots before he placed the posts in 1918. He did not build on the lots and only expected to do so when he became financially able to build. He earned only enough to humbly support his family, in 1918, only getting $8 or $9 a week. He made no effort to get money to build on the lots after 1918. The daughter of appellees, Susie Espinoza, did not corroborate her father in all particulars. She swore he cleared off the weeds, that he put posts around the land in 1919 or 1920. She also stated that two strands of wire were placed on the posts, and said she was sure no plank was put on the posts. She said:

"That fence stayed there until the people went there and took the posts out. I don't remember when that was. I believe it stayed there about one year. It was there when I first cut the weeds. I don't think it was there when I cut the weeds the last time. He never did rebuild it."

We have detailed substantially all the testimony upon which reliance is placed to create homestead rights in the property. Not one thing has been done, according to Espinoza, himself, except to build a one plank fence in 1918, which was torn down and removed in the same year and never rebuilt, and to cut the weeds on the lot. In the cited case of Garcia v. Uveda, the land had been grubbed about one year before it was sold under execution and this court held that a present intention to occupy the land was not shown, but that the owner expected to occupy it at some indefinite time in the future when he might make money enough to improve the land. So, in this case the testimony showed that there was no present intention to occupy the land but the occupation depended on the very doubtful and improbable contingency that appellees would obtain enough money to build a house. That appeared to be a dream incapable of realization. Appellees did not seek to recover the land until a year or two after it had been sold under execution. If any intention to occupy the land had ever been formed it had been abandoned. As said in Garcia v. Uveda:

"No case, among the many liberal ones as to homestead which have expanded the doctrine almost to the breaking point, has been found that has permitted a judgment to stand on evidence of preparation for a homestead as sparse and unsatisfactory as in this case."

As again said by this court in the case of Ewing v. Riley, 246 S. W. 94:

"It is not essential that at the time of the purchase of land intended as a homestead there must be a home residence thereon. But, if the residence is not at the time on the land, those seeking to claim the exemption must have a present intention to build thereon within a reasonable time, and must take such steps and make such preparations, in such manner, within such time, and to such an extent 'as to manifest beyond doubt the intention to complete the improvements and reside upon the place as a home.'"

The evidence utterly fails to meet the requirements laid down.

The judgment, save as to return of the money deposited in the registry of the trial court, is reversed, and judgment here rendered that appellees take nothing by their suit and pay all costs in this behalf expended.