## THIRD NAT. BANK OF PLAINVIEW v. McCLUNG et ux. (No. 2623.)

(Court of Civil Appeals of Texas. Amarillo. March 10, 1926.)

**1. Homestead ⬯57(3)—Evidence held insufficient to show a continued intention to make land, on which lien foreclosure was sought, a homestead.**

In suit to foreclose lien in a deed of trust, executed by wife and husband, on property acquired by her prior to marriage, evidence *held* insufficient to show that intention to use as homestead existing at time deed was executed had not been abandoned.

**2. Homestead ⬯57(3)—Occupancy of land after suit brought to foreclose a lien held not alone sufficient to show bona fide intention to make it a homestead.**

Occupancy of land after suit brought to foreclose a lien thereon, created several years previously, *held* insufficient to show a bona fide intention to occupy as a homestead sustained through the years, absent any claim to land as such, or preparation to occupy it as such after lien was created.

Appeal from District Court, Hale County; R. C. Joiner, Judge.

Action by the Third National Bank of Plainview against John McClung and his wife, Daisy McClung. From a judgment against ·defendant first named alone, plaintiff appeals. Reversed and remanded.

Kinder & Russell and Williams & Martin, ·all of Plainview, for appellant.

Kirk & Griffin, of Plainview, for appellees.

JACKSON, J. The Third National Bank, plaintiff, instituted this suit in the district court of Hale county, Tex., against John McClung and his wife, Daisy McClung, defendants, to recover the sum of $3,449.88, with interest and attorney's fees, evidenced by a note dated August 18, 1923, payable in 60 days after date at Plainview, Tex., and to foreclose a lien on the northwest one-fourth of section 26, block S. I., Hale county, Tex., evidenced by a deed of trust dated October 5, 1922, and duly executed and acknowledged by both of the defendants, to secure the payment of said note, interest, attorney's fees, etc., and to foreclose a chattel mortgage on certain personal property given as security for the note.

The defendant Daisy McClung, joined by her husband, John McClung, individually, and as next friend of her two minor children, Earl and Alfred Elrod, answered by general denial, and pleaded specially: That she was the wife of John McClung, to whom she was married prior to November 16, 1918, and that by a former marriage she was the wife of Owen Elrod, deceased, and that her two minor sons, Earl and Alfred, were the children of herself and her deceased husband. That the land described in plaintiff's petition, and on which it sought to foreclose a lien, was purchased by her after the death of her first husband, and before her marriage to her codefendant, John McClung, for a consideration of $2,840, $1,920 of which was paid out of her separate property, and $920 of which was paid out of the community property of herself and her deceased· husband. That prior to November 16, 1918, John McClung and one Mike Barbain were jointly indebted to the plaintiff for money previously borrowed, which they had failed to pay. That plaintiff, through its officers, approached her on several occasions to induce her to sign a note with her codefendant for said indebtedness, and execute a deed of trust on said land to secure the payment thereof. That she first refused to do so, and informed the plaintiff that the land belonged to her and her two minor sons, and was purchased by her for a homestead, and that since her marriage to her codefendant they had at all times intended to use and occupy same as a home as soon as they were able to build a house thereon. That they owned no other home, and have put a part of this land in cultivation, dug a well thereon, and inclosed it with a fence, which was done for the purpose of occupying it as a home, all of which was known to plaintiff. That she was advised by an officer of the bank that it did not want the land, would .not take it from her, but it borrowed money with notes as collateral, but could not so use said note unless renewed and its payment secured with a deed of trust on said land, but that the land would not be taken if defendants were unable to pay the note. In consequence of these statements, upon which she relied, she was induced to sign a note renewing the prenuptial obligation of her husband, and execute a deed of trust to secure the payment thereof. That relying on such representations, they executed the note and deed of trust sued on, in renewal of the first note and deed of trust signed by her. That they have never abandoned their intention to use and occupy the land as a homestead, and still intend to do so as soon as they are able to build thereon. That they are cultivating the land at this time, and occupied it as a home during a part of the year 1924.

Plaintiff, in a supplemental petition, pleaded general denial.

In response to special issues submitted by the court, the jury found that on October 5, 1922, the date of the execution of the deed of trust ·by. the defendant, it was then their intention to occupy the land in ' controversy as their home, and that on said date they had made preparations to .occupy said land as such. On this verdict the court entered judgment that appellant take nothing in its suit against appellee Daisy McClung, and

that the lien evidenced by the deeds of trust be canceled and held for naught, and that appellant have judgment against the appellee John McClung in the sum of $4,552, with interest from the date of the judgment until paid at the rate of 10 per cent. per annum, for costs, etc.

Appellant, by several assignments, assails, as error, the action of the trial court in refusing its requested peremptory instruction, and in entering judgment canceling its lien against the land, and in refusing it a foreclosure, because the evidence is not sufficient to present the issue of homestead, and does not sustain the findings of the jury, and did not authorize the judgment canceling its lien.

Mrs. McClung testified: That before she married her present husband, John McClung, in the year 1917, she was the widow of Owen Elrod, deceased. That Earl and Alfred are the minor sons of herself and her deceased husband. That while a widow she purchased the land in controversy for a home for a consideration of $1,920, $1,000 of which she paid out of her separate estate, and $920 of which she paid out of the community estate of herself and her deceased husband. That there was 45 acres of the land in cultivation at the time she acquired it. That she lived with her father for a while, but after she married her present husband they rented a place from Mr. Knight, the officer of the plaintiff bank who induced her to sign the first deed of trust, and whom she had known during the lifetime of her first husband. That while she and her present husband lived on Mr. Knight's place, she made some improvement on the land she had bought; broke out an additional 40 acres; had some fence built to separate the pasture from the farm lands, which work was paid for out of the rents received off of her place; and that she had a well drilled on the land. That she and her husband moved off of Mr. Knight's place after this suit was filed, and lived for about three weeks on her land in a movable shack which they had borrowed and had to return, and that was the first time they had ever lived on the place; but that they were living on the place in 1925 and at the time of the trial. That Mr. McDonaldson, an officer of plaintiff bank, sent word by her husband that he wanted to see her, and she went to the bank to see him, and he asked her to sign a note renewing a note the bank held against her husband and Mike Barbain and give a deed of trust on her land to secure its payment. That she refused to sign the note and deed of trust, and Mr. Knight, about two weeks later, came out to where she lived on his place and requested her to execute the note and deed of trust, which she refused to do, telling him that she had bought the land for her home and intended to build on it as soon as she was financially able. That she refused his request on a second trip he made to see her; but the third time he came

he told her that the note of her husband and Barbain could not be used as collateral and the bank needed to borrow money, and if she would sign the renewal note and give the deed of trust, he could use it as collateral for the bank. That if she would treat him right he would stay with her. That he did not want the land and would not have it. That he was not going to rob her, but all he wanted was the paper to borrow the money on—and by these statements, induced her to execute the first renewal note and first deed of trust, and but for which statements she would not have signed them, because she believed that he would not take the land. That Mr. Knight knew that the reason they had not moved on the land was because they were not able to build on it. That they had been trying to get sufficient money on hand to build a house on the land, but had been unable to do so. That they were now living on the land in a half-dugout, which they had built since the institution of the suit.

The evidence shows that the note first signed by Mrs. McClung was a renewal of a note of John McClung and Mike Barbain, and that the note sued on was a renewal of the first note signed by Mrs. McClung, and that both deeds of trust were given to secure the original debt of her present husband and Barbain.

The first deed of trust was executed by Mrs. McClung and her husband on the 16th day of November, A. D. 1918, and contained this stipulation:

"We hereby warrant and certify that we have never used, occupied, designated or enjoyed the above-described tract of land as a homestead."

The second deed of trust was executed October 5, 1922, and contained the same stipulation.

[1, 2] The record discloses that this land was never occupied, used, or enjoyed as homestead property by the appellees until long after the last deed of trust had been executed, and until after a suit was filed to foreclose the lien therein contained. It fails to show that any act was done, or any preparation made, or any improvements placed on the land, indicating the intention to make it the homestead of the family after the execution of the first deed of trust. John McClung, the husband, who had the right as head of the family to choose the homestead (Hanes v. Hanes [Tex. Com. App.] 239 S. W. 190; Ward v. Baker [Tex. Civ. App.] 135 S. W. 620), does not even voice an intention to make the home of the family on the land of his wife and her two boys. While Mrs. McClung's testimony is to the effect that she purchased the property for a home, and that she advised the officer of the bank negotiating with her to secure the lien that she intended to make it her home when she was able to build thereon, the evidence is not

sufficient to show that such intention was not abandoned, because it fails to show any assertion of a homestead claim, any preparation to occupy as a home, or any improvements made on the land between the date, November 16, 1918, of the execution of the first lien and the filing of the suit to foreclose in 1924; and fails to show that the husband at any time selected the property as the homestead of the family, but affirmatively shows that both the husband and the wife in each deed of trust stated that the property had never been used, occupied, designated, or enjoyed as a homestead.

The acts of appellees after the suit was filed are not of sufficient probative force to establish a bona fide intention, sustained throughout the years, to occupy the land as a homestead, in the absence of any assertion of a claim to the land as a homestead, or any preparation to occupy it as a homestead after the execution of the first deed of trust.

"While some cases have held that bare intention will dedicate a tract of land to homestead purposes, the fixed rule of the Texas decisions has been and is that there must be some preparation to improve the property. Franklin v. Coffee, 18 Tex. 413, 70 Am. Dec. 292; Stone v. Darnell, 20 Tex. 11; Potshuisky v. Krempkan, 26 Tex. 307; Moreland v. Barnhart, 44 Tex. 280; Railway v. Winter, 44 Tex. 611; Barnes v. White, 53 Tex. 631; Brooks v. Chatham, 57 Tex. 33; Swope v. Stantzenberger, 59 Tex. 390; Gardner v. Douglass, 64 Tex. 76; Archibald v. Jacobs, 6 S. W. 177, 69 Tex. 251; Dobkins v. Kuykendall, 16 S. W. 743, 81 Tex. 183; Cameron v. Gebhard, 22 S. W. 1033, 85 Tex. 610, 34 Am. St. Rep. 832; West End Co. v. Grigg, 56 S. W. 49, 93 Tex. 456; Garcia v. Uveda (Tex. Civ. App.) 198 S. W. 167; Gallagher v. Gallagher (Tex. Civ. App.) 214 S. W. 516." Cocke v. Espinoza (Tex. Civ. App.) 265 S. W. 1103.

The judgment is reversed, and the cause remanded.

RANDOLPH, J., not sitting.