In re Joseph L. MOORE, d/b/a
Radford Hills Laundry, Debtor.

Joseph L. MOORE, d/b/a Radford Hills
Laundry, Plaintiff,

v.

BANK OF COMMERCE, Defendant.

Bankruptcy No. 187–10247–11.
Adv. No. 188–1016.

United States Bankruptcy Court,
N.D. Texas,
Abilene Division.

Dec. 6, 1988.

Billy W. Boone, Abilene, Tex., for debtor.

Rebecca Conrad and Dean Shuman Conrad & Shuman, Dallas, Tex., for the Bank.

MEMORANDUM OF OPINION ON
BUSINESS HOMESTEAD

JOHN C. AKARD, Bankruptcy
Judge.

Joseph L. Moore, d/b/a Radford Hills
Laundry (Debtor), seeks to set aside a lien

held by Bank of Commerce of Abilene, Texas (Bank) asserting that it constitutes an invalid lien on his business homestead.

### Facts

In 1978, the Debtor and his wife, Alma Faye Moore, moved from Kentucky to Abilene, Texas. They purchased a residence on a 17,000 square foot lot located at 918 Green Valley Drive. In June, 1978, the Debtor acquired the Radford Hills Laundromat (original laundromat). The original laundromat contained approximately 3,600 square feet and operated in leased space in a shopping center. The laundromat was open seven days a week and an attendant was on duty at all times. Mr. Moore regularly worked as an attendant in the laundromat and performed other necessary services such as repair and cleaning. He did not run any other business except in 1983 when he built and sold two houses. The lease on the shopping center space was to expire in January, 1985. Mr. Moore understood that the landlord was raising the rent as leases expired so, in the summer of 1984, he determined to acquire a parcel of land and construct a building in which to operate his laundromat. The Bank agreed to finance the purchase and construction. Prior to purchasing the property, he had plans drawn and secured estimates of construction costs from various parties. He submitted these plans and estimates to the Bank. He operated as his own general contractor and hired different parties to do different portions of the construction work. On August 17, 1984 he entered into an earnest money contract to purchase the land at $5.00 per square foot with a total purchase price of $90,000.00. The contract was subject to obtaining variances on the west and north sides of the property. On September 28, 1984 the Abilene Site Plan Committee granted the variances. On October 3, 1984, he purchased the land from University Hills Joint Venture for the contract price plus closing costs of $353.17. The $5,000.00 earnest money he had placed in escrow in connection with the contract of sale was applied toward this amount and the Bank supplied the balance—$85,353.17. The Warranty Deed from University Hills

Joint Venture to the Debtor recited a vendor's lien note for $260,190.81. The deed transferred the vendor's lien to the Bank. On the same date he executed a note payable to the Bank for $260,190.81 and a Deed of Trust on the property. The note represented the purchase price of the land, $29,826.81 owed by the Debtor to the Bank on a pre-existing debt, and $145,010.83 subsequently advanced by the Bank for the construction of the building on the subject property. The Debtor acknowledged that he would not have purchased this property if the Bank had not agreed to finance construction of the improvements on it. The October 3, 1984, note was renewed several times, including a note of March 1, 1985 which provided for payment of the obligation in monthly installments over a ten year period. The Debtor signed each extension as well as the note and Deed of Trust dated March 1, 1985.

In mid-October, 1984, construction began on the new laundromat. It ended in early January, 1985. The Debtor continued to operate the original laundromat until he moved into the new laundromat on January 9 and 10, 1985. He moved his laundry machines in stages and, consequently, operated in both locations on both days. The Debtor testified that he completed construction of the new laundromat on January 10, 1985 and did not operate the original laundromat after that date.

### Issue

Is the new laundromat the Debtor's business homestead?

### DISCUSSION

The Debtor's pleadings asserted that in the summer of 1984 he made preparations for this property to become his business homestead and, therefore, it became his business homestead at the instant it was acquired. The Debtor's position is that the vendor's lien is valid only to the extent of the funds used for the acquisition of the land. Therefore, he claims, the portions of the note which represent the prior obligation and the construction costs (advanced on a periodic basis as needed during construction) do not constitute valid liens on

the property because he executed no builder's and mechanic's lien contract and Mrs. Moore did not sign any documents.

■ On October 2, 1984 (one day before the Debtor acquired the subject property) an amendment to § 41.001 of the Texas Property Code (Vernon, 1988) became effective which changed the definition of a Texas urban homestead to "one or more lots amounting to not more than one acre of land, together with the improvements thereon." In the instant case, the Debtor's residence homestead contained 17,000 square feet and the subject property contained 18,000 square feet; thus, the total land fits within the 43,560 square feet allowed as exempt under the Texas statute.

Where raw land is held by a party intending to occupy it in the future, a homestead right is created when the intent is manifest by overt acts toward the utilization of the property for homestead purposes. *Harkrider–Keith–Cooke Co. v. Smith*, 284 S.W. 612 (Tex.Civ.App.—Austin 1926). The Texas Supreme Court expressed the basic policy underlying the rule as follows:

> ... If a homestead cannot be acquired until it is occupied, then no one can acquire a homestead exempted from forced sale unless he buys an improved place; and then he must have a race with the sheriff for possession. The unimproved lands of the country and the vacant lots of our cities cannot be acquired for the purpose of making a home by the man who is indebted except at the risk of turning it over to a creditor. If a man owes nothing, or is able to pay all that he owes, he does not need the exemption. If he has other property, he can protect his home by pointing out that other property for sale; but if he has nothing but the homestead, he comes within the necessity of the constitutional provision, and to him is the chief value of exemption.

*Cameron v. Gebhard*, 85 Tex. 610, 22 S.W. 1033, 1035 (1893).

The same rule applies to impressing homestead character on business property. *Hufstedler v. Glenn*, 82 S.W.2d 733 (Tex. Civ.App.—Austin 1935, no writ). It is well-settled that a homestead estate is dependent upon some title or interest in the property, and does not exist as a separate estate in property, independently of such title or interest. *Rutledge v. Mitchell*, 91 S.W. 2d 1135 (Tex.Civ.App.—Austin 1936, writ dism'd). A homestead right does not depend on unqualified fee ownership of the land involved, but may exist in any possessory interest in land. *Gann v. Montgomery*, 210 S.W.2d 255 (Tex.Civ.App.—Fort Worth 1948, writ ref'd n.r.e.). The right will attach to an estate for life. *White v. Blackman*, 168 S.W.2d 531 (Tex.Civ.App.— Texarkana 1943, writ ref'd). It also attaches to a leasehold interest for a fixed term or at will. *Evans v. Galbraith–Foxworth Lumber Co.*, 51 S.W.2d 831 (Tex.Civ. App.—Amarillo 1932, writ dism'd). It may attach to other interests as well. *See*, e.g., *Cheswick v. Freeman*, 282 S.W.2d 315, rev'd on other grounds, 287 S.W.2d 171 (Tex.Civ.App.—Waco 1955) (a tenancy in common); *Moorhouse v. Crew*, 273 S.W.2d 654 (Tex.Civ.App.—San Antonio 1954, writ ref'd) (an undivided interest in land); *Haynes v. Vermillion*, 242 S.W.2d 444 (Tex.Civ.App.—Fort Worth 1951, writ ref'd n.r.e.) (the separate estate of either spouse as well as community property); *Hughes v. Groshart*, 150 S.W.2d 827 (Tex.Civ.App.— Amarillo 1941, no writ) (an equitable estate); *Weiser v. Travis Cotton Seed Products Co.*, 63 S.W.2d 246 (Tex.Civ.App.— Amarillo 1933, writ ref'd) (a joint tenancy).

Texas courts defined which overt acts are sufficient preparation to raw land to evidence the existence of homestead character. In *Lilly v. Lewis*, 249 S.W. 1095 (Tex.Civ.App.—San Antonio 1923, writ dism'd w.o.j.), the Court held the fact that claimant cultivated the land was sufficient to show the existence of the homestead. Other cases in which Texas courts found acts sufficient to impress unimproved property with homestead character include: *Tiblier v. Perez*, 277 S.W. 189 (Tex.Civ.App. —San Antonio 1925), *overruled on other grounds*, 153 Tex. 12, 263 S.W.2d 154 (1953) (pasturing cattle on the land); *Atkinson v. Jackson Bros.*, 259 S.W. 280 (Tex.Civ.App.—Eastland, 1923), modified

on other grounds, 270 S.W. 848 (Tex. Comm'n App.1925, holding approved), (digging a well); *Burton v. Schwartz*, 36 S.W. 2d 1066 (Tex.Civ.App.—Fort Worth 1931, writ dism'd) (excavating); *Dobkins v. Kuykendall*, 81 Tex. 180, 16 S.W. 743 (1891) (constructing a foundation); *Bell v. Greathouse*, 20 Tex.Civ.App. 478, 49 S.W. 258 (Tex.Civ.App.—Waco 1899, no writ) (constructing a sidewalk); and *Clark v. Salinas*, 626 S.W.2d 118 (Tex.Civ.App.— Corpus Christi 1981), *writ ref'd n.r.e. per curiam*, 628 S.W.2d 51 (Tex.1982) (existence of building materials stored on lot belonging to claimant's mother, and plans for improvements).

Cases in which Texas courts found acts of preparation insufficient to uphold a claim of homestead exemption include *Garcia v. Uveda*, 198 S.W. 167 (Tex.Civ.App.— San Antonio 1917, no writ) (digging postholes), *Farmers' National Bank v. Coffman*, 79 S.W.2d 905 (Tex.Civ.App.—Eastland 1935, writ ref'd) (repairing fences), and *Churchwell v. Sweeney*, 29 Tex.Civ. App. 166, 68 S.W. 185 (Tex.Civ.App.—Waco 1902, no writ) (depositing dirt on a lot to fill in depressions).

The Texas cases construing the law by which raw land may be impressed with homestead character all involve a recurring fact pattern, i.e., the claimant performed overt acts in preparation for future occupancy *after* acquiring an interest in the land and *after* formulating an intent to use the land as homestead. The acts of preparation are evidence corroborating the previously existing intent that the property become the homestead in the near future. Another pertinent fact usually mentioned is the absence of any other homestead.

The Debtor points to the fact that he thoroughly investigated this property, secured a variance from the City of Abilene and made at least informal arrangements with a number of contractors and workmen prior to the acquisition of the property as being overt acts sufficient for this property to constitute a part of his homestead. The Debtor's acts of preparation took place prior to his acquisition of the property and they do not rise to the level set by Texas courts to impress the property with homestead character. The Debtor owned a residential homestead and had an existing business homestead. Thus, his situation is distinguishable to that of the claimants in other cases, wherein the courts sought to protect an individual who owned no homestead.

The pleadings and argument of counsel to the contrary notwithstanding, the Debtor's testimony indicated that he didn't really consider the new laundromat his business homestead until January 9 and 10, 1985, when he moved into the property.

It is possible for non-contiguous lots to constitute "a place, that is, one place, at which the business is transacted." *Ford v. Aetna Insurance Company*, 424 S.W.2d 612, 615 (Tex.1968) (citing *Rock Island Plow Co. v. Alten*, 102 Tex. 366, 116 S.W. 1144 (1909). In *Ford*, the lower court pointed out that a person using two business homesteads has the right to elect which one he will claim as homestead, but he is not entitled to claim both. *See, Aetna Insurance Co. v. Ford*, 417 S.W.2d 448 (Tex.Civ.App.—Eastland 1967). It is clear that the place of business is where the head of the family exercises his or her calling and that it must be in one place and cannot consist of several places. *C.D. Shamburger Lumber Co. v. Delavan*, 106 S.W.2d 351 (Tex.Civ.App.—Amarillo 1937, writ ref'd); *Gates v. Pitts*, 2 S.W.2d 307 (Tex.Civ.App.—Amarillo 1927, no writ).

The Court concludes that the intent and overt acts required to have the new laundromat become his business homestead did not occur until January, 1985, when the Debtor moved his business to the property. Therefore, the Debtor could not claim the subject property as his business homestead while actually doing business at a different location.

■ Assuming, *arguendo*, that the property became the Debtor's homestead at an earlier date, certainly it did not become his homestead prior to October 3, 1984, the time at which he acquired title to the property. His deed contained a vendor's lien to secure the note for $260,190.81 and, thus, the property was burdened with that obligation at the time he acquired it. *West End Town Co. v. Grigg*, 93 Tex. 451, 56 S.W. 49 (1900); *Hartell v. Tulsa Rig, Reel*

*& Manufacturing Co.*, 64 S.W.2d 804 (Tex. Civ.App.—Amarillo 1933, no writ). Therefore, the Debtor's business homestead claim would be subordinate to the vendor's lien as well as to the note and deed of trust which continued it. *Wood v. Smith*, 165 S.W. 471 (Tex.Civ.App.—Galveston 1914, no writ).

■ Since the vendor's lien, note, and deed of trust of October 3, 1984 were valid liens on the property, it was not necessary for Mrs. Moore to join in any renewals or extensions—even though the property became the business homestead before the dates of the renewals. The renewals benefited the property by allowing the Debtor additional time to pay the obligation and, thus, prevented foreclosure.

■ The Debtor asserted the fact that the deed of October 3, 1984 referred to Lot 7, Block A, Section 1, University Hills Addition to the City of Abilene raised an issue as to the validity of the Bank's lien on the property. As platted, that lot contained 15,000 square feet. The October 3, 1984 deed was filed for record on October 10, 1984. On October 11, 1984, University Hills Joint Venture filed an amended plat of this and adjacent property, changing the designation of the property to Lot 107, and extending it thirty feet to the north. This resulted in the lot containing 18,000 square feet. On March 18, 1988 University Hills Joint Venture executed a correction deed changing the Lot number to 107. The contract of sale recited a purchase price of $5 per square foot and the price paid by the Debtor indicated that he purchased 18,000 square feet. The replat was submitted to the City of Abilene sometime in advance of its filing and the approval process continued through September and early October. Barber, Brannon, Taylor, Todd, Inc., Engineers, prepared the replat and James David Todd, a Registered Public Surveyor, certified to it. David Todd, who appears to be the same person as the Registered Public Surveyor, represented the Debtor before the Abilene Site Plan Committee on Sep-

tember 28, 1984. The plans submitted to the Site Plan Committee contained 18,000 square feet and conformed to Lot 107 on the replat. The Deed of Trust executed on March 1, 1985 referred to the property as Lot 107. The Debtor was not injured by the replat, and the liens cover Lot 107 of the replat.

### CONCLUSION

The new laundromat became the Debtor's business homestead after the Bank's liens were firmly established against the property. Consequently, the liens held by the Bank are valid and enforceable against the property.

Judgment accordingly.[1]

---

1. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.